# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Maryellen Noreika
302 351 9278
302 425 3011 Fax
mnoreika@mnat.com

September 24, 2012 - *Original Filing Date*

REDACTED - PUBLIC VERSION

The Honorable Gregory M. Sleet
United States District Court
  For the District of Delaware
844 King Street
Wilmington, DE 19801

*VIA ELECTRONIC FILING*

    Re:    *Shelbyzyme, LLC v. Genzyme Corp.*, C.A. No. 09-768 (GMS)

Dear Chief Judge Sleet:

    Shelbyzyme's opposition to Genzyme's crime-fraud motion does not overcome Genzyme's *prima facie* evidence that Shelbyzyme intentionally abandoned and fraudulently revived the '491 application. Instead, it demonstrates that the requested documents were in furtherance of the fraud and should be produced now, or if the Court deems appropriate, after *in camera* review. It also waives any privilege that may have existed in the withheld documents.

    Shelbyzyme's opposition fails on the facts. The excuse Shelbyzyme now gives for not paying the Issue Fee is not what it told the PTO. Moreover, Shelbyzyme does not deny that it told the PTO none of the material facts about the abandonment of the '491 application or the two-year delay in its revival. In particular, it did not tell the PTO that Woessner and RF-CUNY knew an issue fee was due and that the application had gone abandoned long before the petition to revive was filed. Many of the "facts" to which Shelbyzyme points are not supported in the evidence. Finally, Shelbyzyme's repeated reliance on the "state of mind" of Woessner, McGrath and Calhoun, not the documents from the relevant time, demonstrates that the requested documents were in furtherance of the fraud. It also waives the privilege that underlies the withheld documents. On that basis alone, the documents should be produced.

    Shelbyzyme is also mistaken on the law. *Therasense* makes clear that "affirmative acts of egregious misconduct" (e.g., filing a false affidavit or making a false statement) are but for material. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292-93 (Fed. Cir. 2011). The single most reasonable inference in such cases is an intent to deceive. *1st Media* does not change that law. *1st Media, LLC v. Elec. Arts, Inc.*, No. 2010-1435, 2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012). Indeed, *1st Media* distinguishes its facts and conclusion from those in *Aventis*. *Id.* at *13-15. The *Aventis* facts—"awareness of materiality, but careful selective manipulation of where, when and how much of the most material information to disclose" and testimony that was inconsistent with or not supported by contemporaneous documents—established the intent to deceive. *Id.*; *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012). The same is true here. Woessner, McGrath and Calhoun knowingly

did not tell the PTO all of the material facts about either the abandonment or the revival. [Opening Br. at 5.] They selectively told only part of the story. Shelbyzyme also never challenges that Genzyme has met its burden for *in camera* review of the documents.

I. **THE ABANDONMENT AND REVIVAL**

Shelbyzyme ignores McGrath's and Calhoun's knowledge that a Response to Office Action was due on June 8, 1999 and the undisputed fact that they never instructed Woessner to respond. Shelbyzyme's assertions about mislabeled, lost, and not transferred files (*see infra* p. 2) are belied by the extensive communications about the '491 application within RF-CUNY and with Woessner just before the Response was due and by Woessner having the file in hand when he responded to the Office Action.

Shelbyzyme also never explains why it did not tell the PTO all of the "facts" about the abandonment, including that Woessner and RF-CUNY knew the Issue fee was due. Nor does it explain why it never told the PTO its new excuse for not paying the Issue Fee or why it told the PTO something totally different: that had outside counsel contacted Sawitsky she would have consulted with RF-CUNY and an informed decision would have been made (a sworn statement that Shelbyzyme has now morphed into Sawitsky would have told Woessner to pay (Answer Br. at 4)).

Finally, Shelbyzyme never explains the two-year delay in reviving the '491 application. It says only that the PTO could not have relied on Woessner's statement about the delay (an implicit admission that the statement is contrary to Woessner's January 2000 knowledge that the '491 application had gone abandoned). The problem is that Woessner's was the only statement made to the PTO that the entire delay was unintentional. "But for" that assertion, the petition would have failed. And, nowhere does Shelbyzyme address Sawitsky's (and RF-CUNY's) knowledge of the abandonment, Reardan's December 1999 email telling Genzyme that RF-CUNY had not paid the Issue Fee, ███████████████████████████████████████

II. **SHELBYZYME'S FACTS ARE CONTRARY TO THE EVIDENCE**

Shelbyzyme's "facts" are contrary to the evidence. Shelbyzyme contends that Woessner filed the June 8, 1999 Response hoping that RF-CUNY would become his client. [Answer Br. at 3.] But Woessner never sent the response to RF-CUNY and when the Issue Fee Due was sent to McGrath, it asked not if Woessner should pay the fee, but what to do with the file. [*See* DTX-73.][1] Neither is consistent with "I hoped they would become a client." ███████████████████████████████ The evidence supports neither. ███████████████████████████████████████████████████████████████████████████████

Shelbyzyme contends that the file for the '491 application was mislabeled and not found until after the current lawsuit was filed. [Answer Br. at 3.] But Woessner had the file when he

---

[1] The referenced exhibits and deposition testimony are attached as Appendices A and B.

filed the June 8, 1999 Response, when the Notice of Allowance and Issue Fee Due was sent to McGrath in July 1999, and when the Notice of Abandonment was sent to RCT and Orphan in January 2000.

Shelbyzyme contends Woessner believed RF-CUNY may have retained other counsel before the October 4, 1999 issue fee deadline. [Answer Br. at 4.] But Woessner testified that he did not know what RF-CUNY was doing and had heard nothing from them and intentionally did not pay the fee. [Woessner Tr. 117:9-15.] This also contradicts Shelbyzyme's contention that Woessner believed RF-CUNY would pay the fee. [Answer Br. at 1.]

Shelbyzyme contends that Sawitsky did not know she was responsible for the '491 application. Yet, on December 1, 1999, RCT sent Sawitsky a copy of the April 6, 1999 letter that RCT had sent McGrath stating that it was abandoning prosecution of the '491 application and informing McGrath of the Response to Office Action that was due. [DTX-158.]

### III. SHELBYZYME HAS WAIVED THE PRIVILEGE

Throughout its opposition, Shelbyzyme repeatedly relies on the "state of mind" of Woessner, McGrath, and Calhoun to justify the abandonment and revival of the '491 application. It says Shelbyzyme could not instruct Woessner to respond to the Office Action, that Woessner responded hoping that RF-CUNY would become his client, that Woessner thought RF-CUNY would pay the Issue Fee, that McGrath thought she had no duty to pay the fee, that Calhoun did not understand what an Issue Fee was, that Sawitsky did not know she was responsible for the '491 application or that an Issue Fee was due, and that Woessner was referring to RCT, not RF-CUNY, when he said he had been instructed not to pay the Issue Fee. Shelbyzyme's reliance on these "states of mind" waives any privilege to the requested documents.

As this Court, in a crime-fraud privilege case, held: "[W]hen state of mind is an issue in a case, a party should not be permitted to testify about its state of mind at the time allegedly privileged communications occurred, without pointing to nonprivileged evidence to substantiate its claim or allowing the opposition to discover the privileged communications themselves." *Gen. Elec. Co. v. Hoechst Celanese Corp.*, No. 87-458, 1990 WL 154218 at *8 (D. Del. May 8, 1990). *See also Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977); *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 169 (E.D.N.Y. 2010); *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653-54 (N.D. Cal. 1994).

The same rule should apply here. Shelbyzyme has relied on the states of mind of Woessner, McGrath and Calhoun, while withholding the relevant documents. Indeed, Shelbyzyme invoked this same rule when it argued that Dr. Shafmaster should not testify as to her state of mind in 2006 because Genzyme had not produced her opinions.

### IV. CONCLUSION

Genzyme respectfully requests that the Court pierce Shelbyzyme's claimed privilege and work product shield and order the production of these documents now or, if the Court deems appropriate, after *in camera* review. Alternatively, Genzyme respectfully requests that the Court order the documents produced because of Shelbyzyme's waiver of the privilege.

Respectfully,

*/s/ Maryellen Noreika*

Maryellen Noreika (#3208)

3

cc:   Richard L. Horowitz, Esquire (Via Electronic Mail)
David E. Moore, Esquire (Via Electronic Mail)
Frederick A. Lorig, Esquire (Via Electronic Mail)
Joseph M. Paunovich, Esquire (Via Electronic Mail)
Charles P. Emanuel, Esquire (Via Electronic Mail)