IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SHELBYZYME, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  09-768-GMS |
| | ) | |
| GENZYME CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

WHEREAS presently before the court is the defendant's request that the court order

production of certain documents under the crime-fraud exception (D.I. 201); and

WHEREAS the court has considered the parties' written submissions as well as the

applicable law;

IT IS HEREBY ORDERED THAT:

1.      The defendant's production request is GRANTED IN PART;[1]

---

[1] Communications that otherwise would be shielded by the attorney-client privilege or the work product doctrine forfeit such protection when they are made in furtherance of a fraud or crime. *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 482 (D. Del. 2012); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 155 (D. Del. 1977). "The party seeking discovery of privileged communications or documents must prove the crime-fraud exception applies by showing: (1) a *prima facie* case of criminal or fraudulent conduct, and (2) the communications were made in furtherance of the crime or fraud." *Magnetar Techs.*, 886 F. Supp. 2d at 482.

The *prima facie* case of fraud demanded by the first prong requires more than bare allegations of inequitable conduct. *See WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 129 (D. Del. 2010). Rather, fraud in the patent prosecution context consists of the following elements:

(1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, and (4) but for which misrepresentation or deliberate omission the patent would not have been granted.

*C.R. Bard., Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998). The Federal Circuit has further explained that "[a] finding of . . . fraud . . . must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.*, that the patent would not have issued but for the misrepresentation or omission. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000) (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070–71 (Fed. Cir. 1998)). Nevertheless, the court recognizes that a party

seeking only to demonstrate a *prima facie* case of fraud is not required to "conclusively prove fraud" or even submit direct evidence thereof. *Id.* at 808. Indeed, the Federal Circuit has cautioned that "making a *prima facie* showing is 'not a particularly heavy' burden." *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1330 (Fed. Cir. 2011) (quoting *In re Grand Jury Investigation*, 445 F.3d 266, 274–75 (3d Cir. 2006)); *see also Apotex Corp. v. Merck & Co., Inc.*, 507 F.3d 1357, 1362 (Fed. Cir. 2007) (noting that the crime-fraud exception requires only "a *prima facie* showing of some foundation for the asserted fraud").

Here, the defendant, Genzyme Corporation ("Genzyme"), argues that the applicants committed fraud in reviving U.S. Patent Application 08/790,491 (the "'491 Application"), which eventually issued as U.S. Patent No. 7,011,831 (the "'831 Patent"). (D.I. 201 at 1–2.) Under the relevant regulations, an applicant may revive an abandoned application where the abandonment and delay in revival were unintentional. *See* 37 C.F.R. § 1.137(b). Genzyme maintains that both the abandonment of the '491 Application and at least part of the delay in seeking revival were intentional. (D.I. 201 at 2.) Thus, according to Genzyme, the applicants' February 2002 Petition for Revival was fraudulent in its representation that the '491 Application's abandonment was unintentional and that "[t]he entire delay in filing the required reply . . . was unintentional." (*Id.*; D.I. 202 at DTX-19.)

Genzyme relies upon three periods of activity in making its case for fraud. First, it suggests that an intent to abandon can be inferred from the applicants' conduct prior to the July 8, 1999 response to Office Action. (D.I. 201 at 5.) Next, Genzyme argues that the applicants were aware that the Issue Fee was due on October 4, 1999 and deliberately opted not to pay that fee, thereby knowingly abandoning the application. (*Id.*) Finally, the defendant contends that, "in the context of the revival," Research Foundation of the City University of New York ("RF-CUNY") "knew at least as early as December 1999 that the Issue Fee had not been paid; [the prosecuting attorney, Warren Woessner ("Woessner")], had received the Notice of Abandonment . . . in January 2000; and RF-CUNY, [Barbara Sawitsky ("Sawitsky"), the Director of the Office of Licensing & Technology Management at RF-CUNY], and [David Calhoun ("Calhoun")] knew at least by early 2000 that the '491 application had been abandoned." (*Id.*)

Without walking through the complete—and often disputed—factual history underlying the first two bases for Genzyme's request, the court simply observes that the defendant has failed to establish the necessary *prima facie* case for fraud. The first two periods of activity referenced by Genzyme relate to its position that the abandonment itself was intentional, but its arguments along this branch rise only to the level of "mere speculation" and thus are insufficient to establish false representation or intent to deceive. *See Merck Sharp & Dohme Pharms. SRL v. Teva Pharms. USA*, No. 07-1596, 2008 WL 4837397, at *6 (D.N.J. Nov. 5, 2008). Genzyme relies largely upon a supposed "flurry of activity" preceding the July 1999 response to Office Action and the applicants' apparent knowledge of the October Issue Fee due date. (D.I. 201 at 2.) While the court can certainly envision a scenario in which these circumstances are consistent with an underlying intent to abandon, it can just as easily imagine any number of innocent explanations for the facts highlighted by Genzyme. Indeed, the plaintiff, Shelbyzyme, LLC ("Shelbyzyme"), provides the court with such alternative conclusions in its responsive letter brief. (D.I. 206.)

The court, however, believes Genzyme has met its burden with respect to the delay in revival. It is apparently undisputed that Dayton Reardan ("Reardan"), Vice President of Regulatory Affairs at Orphan Medical, RCT's licensee to the Calhoun patent family, and Calhoun met with Genzyme in November 1999 and that Genzyme inquired about pending applications. (D.I. 201 at 3; D.I. 206 at 4.) Reardan's December 1, 1999 responsive email to Genzyme indicates that (1) Woessner believed that, if the Issue Fee was not paid, the application would become abandoned, (2) Reardan asked RF-CUNY if it had paid the Issue Fee on the '491 Application, and (3) RF-CUNY responded that it had not paid the Issue Fee. (D.I. 202 at DTX-10.) While Shelbyzyme correctly notes that neither Woessner nor Reardan were the assignees of the '491 Application as of December 1999, (D.I. 206 at 4 n.4), the email indicates that RF-CUNY itself informed Reardan that it had not paid the Issue Fee, (D.I. 202 at DTX-10). This admission permits the reasonable inference that RF-CUNY knew by December 1999 that the '491 Application had been abandoned, which would render false the applicants' February 2002 representation that "[t]he entire delay in filing the required reply . . . was unintentional." The court believes the necessary inference here rises above "mere speculation."

Additionally, the court finds that Genzyme has satisfied its burden of demonstrating intent. Given the apparent falsity of the applicants' representation to the PTO and their demonstrated knowledge that 37 C.F.R. § 1.137(b) required the entire delay to be unintentional, an inference of intent is not only reasonable but effectively required here. The court understands that, while a finding of actual common law fraud "must be based on

2

2. The plaintiff shall produce the requested documents dated between November 2001 and February 2002 that relate to the revival of U.S. Patent Application 08/790,491;[2] and

3. The court will set a Status Teleconference to discuss the rescheduling of the one-day bench trial on the equitable issues in this matter.

Dated: May 22, 2013

_____
CHIEF, UNITED STATES DISTRICT JUDGE

---

independent and clear evidence of deceptive intent," *In re Spalding Sports*, 203 F.3d at 807, Genzyme need only demonstrate sufficient intent to build a *prima facie* case, *see id.* at 808. Moreover, even to the extent that the Federal Circuit's decision in *Unigene Laboratories, Inc. v. Apotex, Inc.*, 655 F.3d 1352 (Fed. Cir. 2011), did import the "clear evidence" intent requirement into the *prima facie* context, *see* 655 F.3d at 1359, the court believes that Genzyme has met that burden—there is no reason that "clear evidence" cannot take the form of a well-supported inference, which is precisely what Genzyme has allowed for here, *see In re Spalding Sports*, 203 F.3d at 808 ("[T]he party seeking to overcome the attorney-client privilege need not . . . submit direct evidence to make a *prima facie* showing of fraud."); *see also Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (noting, in the inequitable conduct context, that "a district court may infer intent from indirect and circumstantial evidence," but that "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence'").

The court further finds that the reliance and causation prongs of the fraud inquiry are satisfied. Shelbyzyme objects that "the PTO could not have relied upon [Woessner's] statement regarding the length of the delay in the Petition for Revival" because "the PTO already knew that [Woessner] was sent the Notice of Allowance and Notice of Abandonment." (D.I. 206 at 4.) Woessner's representations, however, concerned the knowledge of RF-CUNY and Sawitsky. While the PTO may have been aware that it sent the Notice of Allowance and Notice of Abandonment to Woessner, it could not independently determine what the applicants' themselves knew, and Sawitsky's declaration attached to the Petition for Revival indicates that the applicants had no knowledge of the Notice of Allowance and Issue Fee Due. (D.I. 202 at DTX-19.) Finally, the causation element is satisfied in light of 37 C.F.R. § 1.137(b)'s requirement that the entire delay be unintentional in order for the application to be revived. 37 C.F.R. § 1.137(b)(3).

[2] While the court recognizes that communications subject to the crime-fraud exception may include those that occurred both before and during the commission of the alleged fraud, *see Magnetar Techs.*, 886 F. Supp. 2d at 483; *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009), it is also mindful of the underlying requirement that the communications actually be "in furtherance of" the fraud, *see In re Spalding Sports*, 203 F.3d at 808. The evidence before the court contains no suggestion that the otherwise protected communications made leading up to the July 1999 response to Office Action or the October 1999 Issue Fee due date were made with an eye toward eventually perpetrating a fraud upon the PTO. Given the narrow basis articulated above for the court's invocation of the crime-fraud exception, the court believes those communications in furtherance of the fraud for which Genzyme has made a *prima facie* case are limited to those communications relating to the revival of the '491 Application in February 2002.

3