# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**MARYELLEN NOREIKA**
(302) 351-9278
(302) 425-3011 FAX
nnoreika@mnat.com

Original Filing Date: April 16, 2014
Redacted Filing Date: April 24, 2014

The Honorable Gregory M. Sleet
United States District Court District
  For the District of Delaware
844 North King Street
Wilmington, DE 19801

**REDACTED**
**PUBLIC VERSION**

*VIA ELECTRONIC FILING*

Re: *Shelbyzyme LLC v. Genzyme Corporation,* C.A. No. 09-768 (GMS)

Dear Chief Judge Sleet:

     Pursuant to Paragraph 5a of the December 8, 2010 Scheduling Order (D.I. 28), Genzyme requests that the Court hold a fourth discovery teleconference. Genzyme contends there is good cause for this teleconference, which Shelbyzyme disputes. At issue is the scope of the Court's May 22, 2013 Order granting in-part Genzyme's request for the production of documents under the crime-fraud exception (D.I. 219) and Genzyme's request for reconsideration of the Court's Order. The parties jointly submit this letter detailing these disputes.

## Genzyme's Submission

     At the requested conference, Genzyme would seek an Order, requiring Shelbyzyme to produce all withheld documents, dated between November 2001 to February 2002, relating to the revival of the '491 application, or to confirm that no such documents exist. In view of the single document that Shelbyzyme has produced – the McGrath 2001 draft declaration (Ex. A, Woessner 2392-93), Genzyme would also seek production of the withheld documents, dated between October 1999 and November 2001, relating to the abandonment of the '491 application.[1]

     After opposing Genzyme's crime-fraud motion (D.I. 201), moving for reconsideration (D.I. 220), seeking to certify the Court's Order for appeal (D.I. 229), petitioning for mandamus, and failing at every turn (D.I. 219, 227, 238 and 239), Shelbyzyme now asserts that there is only a single document: a cover letter and an unsigned Declaration of Catherine McGrath (Ex. A) ("the 2001

---

[1] Should the Court order the production of the withheld documents for *in camera* review, Genzyme requests that the Order and review include the relevant withheld documents dated between October 1999 and February 2002. Shelbyzyme has offered to produce, for the Court's review, only a subset of those documents (November 2001 – February 2002). *See infra,* p. 7 and n. 7.

The Honorable Gregory M. Sleet
April 16, 2014
Page 2

declaration") that is subject to production under the Court's May 22, 2013 Order (D.I. 219).[2] *See* Genzyme's Opening Letter Brief (D.I. 201), Ex. C, Entry 54; *see also* Shelbyzyme's 1/6/14 letter (Ex. B). In doing so, Shelbyzyme attempts to cabin the Court's Order to specific documents, recited in footnote 10 of Genzyme's Opening Letter Brief (D.I. 201), and ignores that Genzyme's request was directed to withheld documents falling within a specific date range – November 2001 to February 2002 – that relate to the revival of the '491 application. *Id*. at 5.[3] Consistent with its request and the Court's Order, Genzyme requested that Shelbyzyme produce the relevant documents or identify any it refuses to produce, so the issue could be presented to the Court. *See* Genzyme's 1/28/14 letter, pp. 1-2 (Ex. D). Shelbyzyme has refused. *See* Ex. C, pp. 4-5.

Genzyme also submits that the one document Shelbyzyme did produce, the 2001 declaration, establishes that there were fraudulent misrepresentations with an intent to deceive in reviving the '491 application. It also lays to rest any "speculation" that the abandonment of that application was other than intentional, and negates Shelbyzyme's proffered "alternative conclusions" about the abandonment.[4] It was this "speculation" and these "alternative conclusions" that formed the bases for the Court's denial of its request for documents, dated between October 1999 and November 2001, that relate to the abandonment of the '491 application. *See* D.I. 219, n.1, p. 2, third full paragraph.

In paragraph 3 of her 2001 declaration, Ms. McGrath, Chief Counsel for the Office of Legal Affairs for RF-CUNY, the assignee of the '491 application, and the person at RF CUNY on whose testimony Shelbyzyme relied for its "alternative conclusions", stated (Ex. A, Woessner 2392):

<p style="text-align:center; color:green;">REDACTED</p>

---

[2] Notwithstanding its substantial efforts to withhold this document, Shelbyzyme now asserts that it is entitled to no substantive weight. See 2/5/14 letter (Ex. C), p. 1; see discussions, *infra*, pp. 5-9.

[3] The first sentence of Genzyme's Opening Letter Brief (D.I. 201) stated that Genzyme had attempted to identify the requested withheld documents "based on their descriptions in privilege logs provided by Shelbyzyme." *Id*. at 1, n.1. Footnote 10 recited only those documents that Genzyme could identify from Shelbyzyme's descriptions. It did not limit Genzyme's request.

[4] *See* Shelbyzyme's Responsive Letter Brief (D.I. 206, p.1): "[T]he fee was not paid because RFCUNY believed the prosecuting attorney Dr. Woessner would pay the fee but he believed RFCUNY would pay it" and Dr. Woessner had "received no instructions at all…. I hadn't heard a word" and believed that CUNY "could have been using another firm at that point" to pay the fee."

The Honorable Gregory M. Sleet
April 16, 2014
Page 3

<div style="text-align:center">REDACTED</div>

<div style="text-align:center">REDACTED</div>

No possible "speculation" or "alternative conclusions" remain. Accordingly, Genzyme requested that Shelbyzyme produce or identify the withheld documents, dated between October 1999 and November 2001, that relate to the abandonment of the '491 application. Shelbyzyme has refused. *See* Ex. C, pp. 1-4.[5]

In its 2/5/14 letter (Ex. C), Shelbyzyme argues that the single document that it did produce, the McGrath 2001 declaration, is entitled to no substantive weight because Ms. McGrath was not the source of the statements in the declaration, she never saw the declaration or discussed its contents with anyone, Dr. Woessner never asked her whether RF-CUNY wanted him to pay the Issue Fee, and she did not, because of the aftermath of 9/11, have a phone or fax at the time the declaration was prepared and sent to her. *See* Ex. C, pp. 1-4. In its Submission (*infra,* pp. 5-9) and its annexed three after-the-fact declarations (Ms. McGrath (Ex. I) [6], Dr. Woessner (Ex. L) and Mr. Slonim (RF-CUNY) (Ex. J)), Shelbyzyme makes the same assertions.

The contemporaneous documents, however, flatly contradict Shelbyzyme's newly-minted positions. First and foremost is the 12/7/01 cover letter sending the 2001 declaration to Ms. McGrath (Ex. A, Woessner 2390-91):

<div style="text-align:center">REDACTED</div>

Second, the November and December 2001 time records of the Woessner firm and its actual invoices to Research Corporation Technologies ("RCT"), the former and subsequent owner of the '491 application, reflect numerous pre-12/7/01 telephone conferences between the firm and Ms.

---

[5] Shelbyzyme has offered one-hour depositions of Dr. Woessner and Ms. McGrath. Until these discovery disputes are resolved, however, such piecemeal depositions are not warranted.

[6] <div style="text-align:center">REDACTED</div>

The Honorable Gregory M. Sleet
April 16, 2014
Page 4

McGrath about the declaration.  See Exs. E and F, 11/30/01 WDW and KAJ entries and 12/05/01 KAJ entry.  Third, on the very day (12/7/01) that the Woessner firm faxed the cover letter and 2001 declaration to Ms. McGrath (at fax number 212-417-8369) (Ex. A, Woessner 2390-91; *see also* Ex. F (12/7/01 CBB entry), RCT sent Ms. McGrath an 18-page fax to *the same number* (noting her post 9/11 address and contact information and that the fax was "sent") (Ex. G) **and** Ms. McGrath sent Dr. Calhoun an 18-page fax (on Dec-07-01 at 3:02 pm) under a printed fax cover sheet listing her post-9/11 RF-CUNY address:  555 West 57th Street, telephone: 212-417-8360 and fax: 212-417-8369 (the **same fax number** used by the Woessner firm and RCT **on that same day**) (Ex. H).  This contemporaneous evidence demonstrates, without a doubt, that Ms. McGrath had a fax machine and a fax number (212-417-8369) and was using them on 12/7/01, albeit different ones from her pre-9/11 machine and fax number.  Mr. Slonim's statements in his declaration (Ex. J) about the post 9/11 fax numbers at RF-CUNY change none of those facts and are directly contradicted by Ms. McGrath's own 12/7/01 printed fax cover sheet.  Indeed, in its submission, Shelbyzyme refers to Verizon fax numbers that were not even in use on 12/7/01 (*infra*, pp. 5-6).  *See* Ex. J, para 7.

The McGrath 2001 declaration (Ex. A, Woessner 2392-93), wholly apart from its statements about RF-CUNY'S intentional non-payment of the Issue Fee, also directly contradicts Shelbyzyme's assertions that Ms. McGrath was not involved in the preparation of the 2001 declaration.                                          REDACTED




REDACTED




This assertion, however, is belied by the fact that he sent the July 1999 Notice of Allowance and Issue Fee Due for the '491 application to Ms. McGrath, not RCT or Orphan Medical, and asked her what to do with the file (Ex. O).

In its Submission, Shelbyzyme also argues that Ms. McGrath assumed that Dr. Woessner was going to pay the Issue Fee in the '491 application (*infra*, p. 8).  Such assertion is inconsistent with the 2001 declaration, with Dr. Woessner's request "what we should do with this file" when he sent the Notice of Allowance in the '491 application to Ms. McGrath in July 1999 (Ex. O), and with RCT's May 11, 1999 letter to Ms. McGrath informing her that, unless Dr. Woessner heard directly from Ms. McGrath, he was no longer responsible for the maintenance of the '491 application (Ex. P, p. 2).

The Honorable Gregory M. Sleet
April 16, 2014
Page 5

## **Shelbyzyme's Submission**

The attached declarations by RFCUNY's current Chief Counsel, Mr. Slonim, and its former Chief Counsel, Ms. McGrath, show that Ms. McGrath had no input in the content of the draft declaration referred to by Genzyme.  *See* Exs. I, J.  The declarations verify that the pre-9/11 fax number (212) 417-8369 was disabled as a result of the destruction of the RFCUNY building on 9/11, that Ms. McGrath did not have a fax machine to receive the at issue draft declaration on the date it was allegedly sent, and that the new fax numbers that were assigned post-9/11 did not include (212) 417-8369, the number listed on the draft declaration fax cover sheet.  Ms. McGrath also previously testified and affirms again in her declaration that she had no input in the content of the draft declaration, never received the draft declaration, disagrees with its contents and in fact never saw the contents before this suit was filed.  *See* Ex. I, at ¶¶ 3-4.

Contrary to Genzyme's accusations, Shelbyzyme fully complied with the Court's May 22, 2013 Order by producing to Genzyme exactly what it asked for and what is called for by the Order, "the requested documents dated between November 2001 and February 2002 that relate to the revival of U.S. Patent Application 08/790,491," including the draft declaration that is the subject of Genzyme's section above.  The already produced draft declaration was never sent to Ms. McGrath and does not reflect any input from her, much less any agreement as to its contents.  Ms. McGrath previously testified that she did not discuss the draft declaration with anyone at Dr. Woessner's firm.  *See* Ex. K, McGrath Tr. 40:15-17, 41:18-42:15, 43:21-44:14; *see also* Ex. I, at ¶¶ 3-4.  Ms. McGrath's telephone numbers had been changed and her fax machine was destroyed on 9/11 so she could not have received the draft declaration as Genzyme speculates.  This is confirmed again by Ms. McGrath in her attached declaration (Ex. I) and by RFCUNY in its attached declaration (Ex. J) which verify that new telephone numbers had been assigned and the new fax numbers which were assigned post-9/11 did not include (212) 417-8369, the number referred to on the draft declaration fax cover sheet relied upon by Genzyme.  As noted by Ms. McGrath's successor at RFCUNY, Mr. Slonim:

REDACTED

Ex. J, at ¶ 6 (emphasis added).

The Honorable Gregory M. Sleet
April 16, 2014
Page 6

      Despite evidence that Ms. McGrath's fax and telephone numbers had changed, Genzyme rejected plaintiff's offer of a second deposition of Ms. McGrath and third deposition of Dr. Woessner on the contents of the draft declaration the Court ordered produced.  Instead, Genzyme asks the Court to expand its May 22, 2013 Order by compelling the production of still more privileged documents dated between November 2001 and February 2002 that Genzyme never sought to compel (even though it could have by simply reviewing privilege logs and identifying documents it wanted to compel).  But the Court's May 22, 2013 Order states:

> "The plaintiff [Shelbyzyme] shall produce the **requested** documents dated between November 2001 and February 2002 that relate to the revival of U.S. Patent Application 08/790,491." D.I. 219 at p. 3, ¶ 2 (emphasis added).

Genzyme specifically limited its request in its motion to the following:

> "Genzyme seeks production of documents dated between November 2001 and February 2002 that relate to applicants' fraudulent revival of the '491 application.[10]"

Footnote 10 referenced in Genzyme's request in its motion identified only two multi-page documents that fell within that date range that relate to the revival of the '491 application:

> "The 'McGrath Declaration,' and the 'Sawitsky Declaration' [*See* Entries 119-135 (Ex. E)]" D.I. 201 at p. 5 and n. 10.[7]

Both have now been produced.  Genzyme even acknowledged during the June 27, 2013 teleconference with the Court that its request and the Order was limited to these "specific documents" and when asked point blank by the Court whether it had asked for the documents it now requests, Genzyme's counsel stated "I don't think we asked for any of those documents."  D.I. 233 at 3:5-4:18.  Thus, Genzyme's claim that Shelbyzyme has not complied with the Court's Order is false and there is no basis for further piercing of RFCUNY's attorney-client privilege.

      In order to put Genzyme's baseless allegations to rest, and while reserving its right to object to the production of additional privileged documents to Genzyme's counsel, Shelbyzyme would not oppose an Order for *in camera* review by the Court of all documents bearing a date from November 2001 to February 2002 that relate to the revival of the '491 application.  But these additional documents were not requested by Genzyme, were not subject of the prior briefing to the Court or the Court's Order and thus remain privileged.

---

[7]  In footnote 10 of its motion, Genzyme identified one additional privileged document and one redacted billing entry that fall within the November 2001 and February 2002 date range.  But as Shelbyzyme previously explained to Genzyme, these do not relate to the revival of the '491 application and therefore have not been produced.  If the Court so orders, these will be produced for *in camera* review to demonstrate that they do not relate to the revival.

The Honorable Gregory M. Sleet
April 16, 2014
Page 7

      Genzyme argues that the Court should also reconsider its Order denying Genzyme's request to pierce privilege on another document date range in light of the draft declaration by erroneously assuming the contents came from Ms. McGrath.[8]  Ms. McGrath testified in her prior deposition that she did not discuss the draft declaration with Dr. Woessner or his firm, much less have any input as to the contents of the draft declaration.  Ex. K, McGrath Tr. 40:15-17, 41:18-42:15, 43:21-44:14.  Ms. McGrath again confirmed in her attached declaration that she did not discuss the draft declaration with anyone at Dr. Woessner's firm, and had no input as to the contents of the draft.  Ex. I, at ¶¶ 3-4.  To date, Genzyme has refused to depose her on the draft declaration, although Ms. McGrath has agreed to a short second deposition despite her disability related retirement from RFCUNY.

<center>REDACTED</center>

As Dr. Woessner previously testified, there is no record of any such call happening:

> Q.  So on October 2nd, the day the fee was due -- or October 4th, I don't know whether there's a weekend here or not, it's docketed for the 2nd but it says the 4th -- you didn't pay, and you had no instructions to pay or not pay?
> A.  That's my recollection, that nobody had given us any instructions at that point at all.
>
> <center>*   *   *</center>
>
> A.  Sometimes they can't bill.  I mean, I would say -- call -- this application belongs to CUNY, call up Katherine McGrath and ask her what she wants to do with it. But nobody, to my recollection, and I've recalled pretty hard, nobody ever communicated with us about this case one way or the other.

Ex. M, Woessner Tr. 114:6-16, 115:7-116:25, 118:4-11.

---

[8] *See supra*, at p. 2 ("In paragraph 3 of *her* 2001 declaration, Ms. McGrath ... *stated* ...") (emphasis added); *see also* 1/28/2014 Letter (Ex. D at p. 3).

The Honorable Gregory M. Sleet
April 16, 2014
Page 8

      Dr. Woessner also testified that the teleconferences referenced in billing records may reflect his firm's attempts to reach Ms. McGrath and not being able to reach her. *See* Ex. M, Woessner Tr. 250:18-24. Genzyme's identification of fax number (212) 417-8369 on the draft declaration fax cover sheet (Ex. A) and two unrelated fax cover sheets (Exs. G, H) does not demonstrate that Ms. McGrath received the draft declaration or had any input as to its content. The fax number (212) 417-8369 was disabled on 9/11 and was no longer in use by Ms. McGrath. *See* Ex. J, at ¶¶ 5-7; Ex. I, at ¶ 5. With respect to Genzyme's arguments as to the alleged "conversations" and teleconferences referenced on the draft declaration fax cover sheet and Dr. Woessner's billing records, Ms. McGrath previously testified that she did not discuss the draft declaration with Dr. Woessner or anyone at his firm. *See* Ex. K, McGrath Tr. 40:15-17, 41:18-42:15, 43:21-44:14; *see also* Ex. I, at ¶¶ 3-4.

      The unintentional abandonment of the '491 application was briefed at length in connection with Genzyme's prior motion which was denied. *See* D.I. 219 at n.1, p. 2. The evidence showed that Dr. Woessner never asked RFCUNY whether he should pay the issue fee. Ms. McGrath assumed that Dr. Woessner was going to pay the fee and she had no intention of abandoning the application:

> Q. You knew that an issue fee had to be paid when you had a notice of allowance; correct?
>
> A. I knew, in fact, if there was a notice of allowance, that an issue fee would be paid; but it was generally paid by outside counsel.
>
> Q. And would outside counsel receive instructions from RFCUNY to pay it?
>
> A. I think they didn't need to receive instructions if they were prosecuting the patent for us. If they did, we should get a new outside counsel. It should have just been paid, I suppose, if, in fact, that was the case.

Ex. K, McGrath Tr. 31:21-32:15, 36:3-9. Dr. Woessner, who like Ms. McGrath has no financial interest in the outcome of this case, confirmed that no one ever told him not to pay the fee:

> Q. Did anyone instruct you not to pay the fee?
>
> A. Not to pay the fee? No.
>
>          \*       \*       \*
>
> Q. Is it correct that you were instructed not to pay the issue fee in the '491 application?
>
> A. Nobody ever instructed me not to pay the issue fee.
>
>          \*       \*       \*

The Honorable Gregory M. Sleet
April 16, 2014
Page 9

>    Q.  Did anyone at CUNY, in 1999, tell you not to pay the issue fee -- the base issue fee for the patent?
>
>    A.  No.

Ex. M, Woessner Tr. 111:22-23, 148:11-15, 203:18-21.

None of the three fax documents identified by Genzyme are to the contrary since they do not include fax confirmation sheets nor transmission information on the documents that would indicate the faxes were sent and received, or that would identify the actual fax number used for any purported transmission.  The presence of a handwritten note "Sent" on the fax purportedly sent from RCT (*see* upper right corner of Ex. G) hardly demonstrates that the fax was sent and received. Further, there is no indication on the pre-printed fax (Ex. H) Ms. McGrath purportedly sent to Dr. Calhoun in December 2001 as to the number from which it was actually sent (*see* the fax transmission information at top of page) and,                REDACTED


*See* Ex. I, at ¶ 5; Ex. J, at ¶¶ 8, 10.  In addition, Genzyme's assertion that the fax number (212) 417-8369 was the number used by Ms. McGrath <u>after</u> the events of 9/11 is unsupported by any fax confirmation sheets or transmission information on the above documents, and is contradicted by the RFCUNY declaration and records attached hereto.  *See* Ex. J, at ¶¶ 3-10.

In sum, the facts have not changed since the Court denied Genzyme's prior motion to pierce RFCUNY's privilege on documents relating to the abandonment of the '491 application. Shelbyzyme complied with the Court's Order by producing the *requested* documents dated between November 2001 and February 2002 that relate to the revival of the '491 application.  As stated above, if the Court so orders, Shelbyzyme will produce for *in camera* review all documents in the November 2001 to February 2002 date range that relate to the revival, even though Genzyme's motion only requested, and the Court's Order only required, the production of the documents that Shelbyzyme has now produced.

Given the above impasse, Genzyme respectfully requests that a further discovery teleconference be permitted.

>                    Respectfully,
>
>                    */s/ Maryellen Noreika*
>
>                    Maryellen Noreika (#3208)

Attachments
Exhibits A-P